IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


DERIC LaVELLE MAY, # 209534,        :

    Plaintiff,                      :

vs.                                 :   CIVIL ACTION 15-304-KD-M

WALTER MYERS, *et al.*,             :

    Defendants.                     :


REPORT AND RECOMMENDATION

    This § 1983 action, filed by an Alabama prison inmate proceeding *pro se*, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action.  Plaintiff, who is known to the Court as a "three striker," filed a Motion to Proceed Without Prepayment of Fees when he filed his Complaint instead of paying the $400 filing fee, which he is required to pay as a "three-striker" unless he meets the exception to 28 U.S.C. § 1915(g).  Plaintiff is aware of this requirement, as several of his actions have been dismissed pursuant to § 1915(g).  After reviewing Plaintiff's Complaint, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

I.  Applicable Law.

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed.  *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002).  "The only exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of serious physical injury.'"  *Rivera v. Allin*, 144 F.3d 719, 723 (11th Cir. 1998), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 215-16 (2007).

In the present action, Plaintiff filed a Complaint that is essentially a duplicate of the Complaint in *May v. Andrews*, CA No. 15-211-KD-N, 2015 U.S. Dist. LEXIS 71442 (S.D. Ala. May 7, 2015), *objected to and dismissed without*

*prejudice by*, 2015 U.S. Dist. LEXIS 71439 (June 2, 2015),[1]

which was deemed by Plaintiff to be a refiling of *May v.*

*Andrews,* CA No. 15-30-KD-M, 2015 U.S. Dist. LEXIS 53856

(S.D. Ala. April 24, 2015), which were both dismissed

pursuant to 28 U.S.C. § 1915(g).  The present action's

Defendants are the same as the named Defendants in the

prior actions, namely, Bennie Andrews, a registered nurse

and the Health Services Administrator at Holman

Correctional Facility ("Holman"); Ms. McCea, Registered

Nurse and Director of Nursing at Holman; and Walter Myers,

Warden at Holman.  (Doc. 1 at 5-6).  The present

Complaint's allegations vary only slightly from the prior

---

[1]    Plaintiff filed and objection to the report and recommendation entered in CA No. 15-0211-KD-N claiming the action was a refiling of CA No. 15-030-KD-M and the Court failed to adhere to its prescribed Local Rule 3.3(b).  (*See* CA No. 15-211-KD-N, Doc. 5).

Local Rule 3.3(b) states "[w]henever an action or proceeding terminated by entry of a notice or order of dismissal is refiled without a substantial change in issues or parties, it shall be assigned or transferred to the district judge to whom the original action or proceeding was assigned, unless otherwise ordered by the chief judge."

While this rule has no bearing on the outcome of Plaintiff's action, nor does it defeat the purpose and implementation of §1915(g), Plaintiff should be aware that CA No. 15-211-KD-N was assigned to the same United States District Judge as his previous case, CA No. 15-30-KD-M, as has this current action.  The report and recommendation of CA No. 15-211-KD-N was adopted over May's objection on June 2, 2015, and judgment was entered against Plaintiff May. *See May v. Andrews*, CA No. 15-211-KD-N, 2015 U.S. Dist. LEXIS 71439 (June 2, 2015).

action, with the chief variation being the specific factual
detail attached to the claim against Defendant Myers, which
states:

> An example of (Myers) failure to install any form
> of audit procedures to check on the performance
> of it[s] contracter[sic] of medical services is,
> he allowed the medical staff to begin (May's) VP
> shunt examination incorrect[ly]. . . . On October
> 30, 2014, (May) was taken to a[n] outside
> hospital for a CT scan of his head, however, the
> examination must be started with an X-Ray of
> (May's) skull to check for increase of cranial
> cavity size.   On October 14, 2014 (Dr. Kouns)
> did discuss with (May) that X Rays was going to
> be ordered, however, treatment was interfered
> with and no X Rays were ordered and no other
> tests were ordered and (May) still suffers with a
> VP shunt malfunction and nothing else has been
> done.   The total withdrawal of medical treatment
> for (May's) serious medical condition has caused
> rapid deterioration to his condition.

(*Id.* at 8).  The claim against Defendant Myers in the
prior action is merely a conclusory allegation and
fails to include the details of May's hospital
experience, specifically the lack of an x-ray being
performed on October 30, 2014; the previous complaints
further fail to allege that Dr. Kouns recommended an
x-ray to be performed along with a CT scan or even
mention that a x-ray test was to be performed along
with the CT scan.  (*See and compare* Docs. 1).
Otherwise, the claims against the defendants are

virtually identical with variations being mostly grammatical changes.[2]

The primary reason that the prior action did not satisfy § 1915(g)'s exception was Plaintiff did not show that he was "under imminent danger of serious physical injury" when the Complaint was filed in April, 2015, due to the allegations against the named Defendants having transpired from October, 2014, through December, 2014. 2015 U.S. Dist. LEXIS, at *6-11.  Now, in the present

---

[2]    In the current complaint, May alleges that on October 30, 2014, "(Andrews) displayed grossly deficient medical care by relying on an incomplete medical report that denied (May) medical care.  The medical report does not mention if the VP shunt is working as it was designed to work" (doc. 1 at 5), and that on December 19, 2014 (McCea) displayed grossly deficient medical care by relying on an incomplete medical report that denied (May) medical care.  The report does not mention if the shunt is working as it was designed to work."  (*Id*. at 6).

In the previous complaint of CA-15-0211-KD-N, May alleges that "on October 30, 2014, (Andrews) displayed grossly deficient medical care by relying on an incomplete medical report that denied (May) medical treatment.  The report (Andrews) relied on to make his decision does not reveal that (May's) VP shunt is working as it was designed to work" (doc. 1 at 5), and that "on October 30, 2014 (McCea) displayed grossly deficient medical care by relying on an incomplete medical report to deny (May) medical treatment.  The report (McCea) relied on does not reveal that (May's) VP shunt is working as it is designed to work."  (*Id*. at 6).  May further claims that on December 19, 2014, Andrews denied the grievance May filed pertaining to his VP shunt malfunction, stating claiming that Andrews "can not make a decision in his own self interest about (May's) CT scans and VP shunt malfunction . . . ."  (*Id*. at 10-11).

action, his allegations are essentially the same and arise during same time period, October, 2014, to December, 2014, but the time of the present Complaint's filing, June 8, 2015 (doc. 1 at 9), is even further removed in time from when Plaintiff's claims arose.[3]   *See Houston v. Lack,* 487 U.S. 266, 276, 108 S. Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (filing occurs when a prisoner delivers a pleading to prison officials for forwarding to the court). Moreover, in the Plaintiff's present and prior actions, he

---

[3]     Absent evidence to the contrary, the Court assumes that Plaintiff's complaint was delivered to prison authorities for mailing on the day that May signed it.  *See Washington v. U.S.*, 243 F.3d 1299, 1301 (11th Cir. 2001). Under the "mailbox rule," "a prisoner's *pro se* petition or complaint is deemed filed the date it is delivered to prison authorities for mailing." *Id.*  However, in the case at hand, May failed to date his executed complaint. (*See* Doc. 1 at 8).   The envelope mailed to the Court containing the complaint was postmarked June 8, 2015 (doc. 1 at 9), and the Court received and docketed the complaint on June 10, 2015.  (Doc. 1).  Given that the complaint is signed, but not dated, the Court turns to the postmark date of Plaintiff's filing to determine when it was delivered to prison officials for mailing to determine the date of filing per the mailbox rule.  *Tuff v. Cooper*, CV 311-077, 2013 U.S. Dist. LEXIS 101488, *13-14 (S.D. Ga. June 28, 2013) (citing *McCiskill v. Smith*, No. 3:09cv298/MCR/EMT, 2012 U.S. Dist. LEXIS 24155, 2012 WL 612813, at *1 n.1 (N.D. Fla. Jan. 25, 2012) (looking first to the date of the complaint and postmark date on envelope before deeming case filed on the date received by the clerk of court); *United States v. Bell*, 203 F. Supp. 2d 1287, 1291 (S.D. Ala. 2002) (using date of prison's "block stamp" on prisoner's mailing envelope as date pleadings were delivered to prison officials)).

identifies the date of October 30, 2014, as when the complained of conduct occurred.  (Docs. 1 at 4).

Inasmuch as the Court, namely, District Judge DuBose and Magistrate Judge Nelson, previously ruled on these allegations, the undersigned hereby adopts the reasoning set forth in *May v. Andrews,* CA No. 15-211-KD-N, 2015 U.S. Dist. LEXIS 71442 (S.D. Ala. May 7, 2015), *objected to and dismissed without prejudice by*, 2015 U.S. Dist. LEXIS 71439 (June 2, 2015)*,* and incorporates the majority of its opinion, which is set out below.

> Even though plaintiff is known to this Court as a "three-striker," the Court reviewed the records of the United States District Court for the Southern, Middle, and Northern Districts of Alabama to verify that he has three or more in forma pauperis actions or appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief can be granted.  From this review the Court discovered plaintiff has seven actions and appeals that were dismissed based on one of the foregoing reasons, namely, May v. Culliver, CA No. 10-0121-CG-C (S.D. Ala. Feb. 24, 2012) (failure to state a claim), appeal dismissed (11th Cir. Sept. 20, 2012) (frivolous); May v. Patterson, CA No. 12-0703-KD-N (S.D. Ala. Sept. 5, 2013) (malicious), appeal dismissed (11th Cir. June 4, 2013) (frivolous); May v. Barber, CA No. 13-0237-CB-C (S.D. Ala. July 22, 2013) (malicious), appeal dismissed (11th Cir. July 24, 2014) (frivolous); May v. Patterson, App. No. 13-14499-C (11th Cir. June 26, 2014) (frivolous) (corresponding district court case is CA No. 11-0675-KD-B (S.D. Ala. Sept. 9, 2013) (dismissed on defendants' summary judgment motion). FN1

FN1   In addition to these actions and appeals, this Court's docket reflects twelve other actions filed by plaintiff as well as another action filed in the Northern District of Alabama.  Based on a review of all plaintiff's actions, fifteen of plaintiff's actions contain claims based on medical issues related to plaintiff's head, namely, May v. Sexton, CA No. 97-2881-SCP-RRA; May v. Culliver, CA No. 10-0121-CG-C; May v. Patterson, CA No. 11-0675-KD-B; May v. Barber, CA No. 13-0237-CB-C; May v. Barber, CA No. 13-0429-CB-M; May v. Hetzel, CA No. 14-0155-CG-C; May v. Howard, CA No. 13-557-CG-C; May v. Thomas, CA No. 13-0385-CB-M; May v. Hetzel, CA No. 14-155-WS-M; May v. Barber, CA No. 14-0479-WS-N; May v. Stone, CA No. 15-25-KD-B; May v. Andrews, CA No. 15-30-KD-M; May v. Myers, CA No. 15-211-KD-N (present action); May v. Barber, CA No. 15-201-WS-C; and May v. Hetzel, CA No. 15-230-KD-M.   Furthermore, seven of his actions have been dismissed pursuant to 28 U.S.C. § 1915(g), namely, May v. Barber, CA No. 13-0429-CB-M; May v. Howard, CA No. 13-0557-CG-C; May v. Smith, CA No. 14-0171-CG-B; May v. Myers, CA No. 14-0271-KD-B; May v. Thomas, CA No. 13-0385-CB-M; May v. Stone, CA No. 15-0025-KD-B; and May v. Andrews, CA No. 15-30-KD-M.

In order to avoid the dismissal of the present action pursuant to § 1915(g), plaintiff must satisfy the exception to § 1915(g), which requires that at the time of the complaint's filing, he show that he was "under imminent danger of serious physical injury."  See Adbul-Akabar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), cert. denied, 533 U.S. 953 (2001);

8

Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time).

In determining if the exception to § 1915(g) is satisfied, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." Brown, 387 F.3d at 1350. To make this showing, a plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]" Ball v. Allen, CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (citation and quotation marks omitted) (unpublished) (Granade, C.J.). Plaintiff has not done this.

**II.  Complaint's Allegations.**  (Doc. 1).

On April 17, 2015, the Court received plaintiff's complaint signed on April 16, 2015.  (Doc. 1 at 7).  At the beginning of the complaint, plaintiff informs the Court "that this is a refiled action" because Magistrate Judge Milling found that his prior action did not satisfy the exception to § 1915(g).  Plaintiff also advised that in another action, May v. Hetzel, CA No. 14-155-WS-M, Magistrate Judge Milling found that he met the exception.

The Court determines that the unidentified action to which plaintiff refers in which he did not satisfy the exception to § 1915(g) is May v. Andrews, CA No. 15-30-KD-M (S.D. Ala. Apr. 24, 2015).  In this prior action, the defendants are the same as in the present action, and the prior allegations are similar to present allegations, particularly with the respect to the time frame. The present complaint adds a few non-pertinent flourishes in what appears to be an attempt to satisfy § 1915(g)'s exception.

In the present complaint, plaintiff names as defendants, Bennie Andrews, Health Services Administrator; Walter Myers, Warden; and Ms. McCea, Registered Nurse and Director of Nursing. (Id. at 5). The present complaint's allegations are as follows.

On October 14, 2014, plaintiff alleges that he saw Dr. Kouns due to frequent and severe headaches. (Id. at 8). Plaintiff told Dr. Kouns that he had a "ventriculoperitoneal shunt malfunction[, which] maybe what is causing his headaches." (Id.). Dr. Kouns requested that plaintiff receive a CT scan of his brain. (Id.). On October 24, 2014, plaintiff was taken to Atmore Community Hospital for a CT scan. (Id.). When plaintiff requested the results, defendant Andrews told him that the final impression was: "Postsurgical changes within the brain. Ventriculostomy shunt appears to be in good position and no change in ventricle size is noted. No acute findings are seen." (Id.). Plaintiff contends that the report does not mention if his "shunt is working as it was designed to work." (Id.). Plaintiff maintains that surgically creating a hole for drainage in his skull and brain is "abusive and degrading and [his] condition is evidence that he is deprived of contemporary standards of decency and a basic human need to safety and medical care, such inhumane conditions should not exist especially being exposed to an excessive risk of harm." (Id.).

On December 19, 2014, plaintiff signed up for sick call, requesting that his shunt ("shunt" or "VP shunt") be replaced because "it has collapsed and does not refill." (Id.). Defendant McCea "asked [him] was he a doctor." (Id.). Plaintiff told "her that a neurosurgeon in his medical reports of July 12, 2010 revealed the shunt has collapsed and does not refill." (Id.). Plaintiff argues that Defendant McCea "attempted to make up a clever trick by acknowledging that [his] [two] CT scans revealed his shunt to be working." (Id.).

To support his claim, plaintiff maintains that
his CT scan of February, 2014, "does not mention
if the [VP shunt] is working as it was designed
to work [because] the only thing the report says
pertaining to [his] [VP shunt] is, 'there is a VP
shunt 'tube' that enters right superior occipital
bone and goes into the right lateral ventricle.'"
(Id. at 9-10). FN2

> FN2 This CT scan was included as a part
> of plaintiff's allegations in May v.
> Stone, CA 15-25-KD-B (S.D. Ala.
> pending). In this prior action,
> plaintiff alleged that after he had a
> CT scan on February 27, 2014 for
> frequent and severe headaches, Dr.
> Stone met with him on March 5, 2015 to
> discuss the CT scan's findings, which
> showed, among other things, "[n]o
> intracranial bleed or mass effect[.]"
> (Doc. 1 at 8). Later, on March 27,
> 2014, plaintiff signed up to see the
> Dr. Stone again, which prompted Dr.
> Stone to write to plaintiff stating:
>
> > I do not need to see you
> > again re: the matter of a
> > neurologist or neurosurgeon
> > consult related to your
> > shunt. As I explained to you
> > on your CCC (Chronic Care
> > Clinic) visit of March 5,
> > 2014, the CT of your head of
> > February 21, 2014 is the same
> > or even slightly improved as
> > compared to the CT of July
> > 22, 2009. This is my
> > decision at this time.
>
> (Id. at 9).

Then, the CT scan of October 24, 2014, states
that his "[v]entriculostomy appears to be in good
position." (Id.). Plaintiff asserts that
neither of these two CT scans stated that his VP

"shunt is working as it was designed to work." (Id. at 10).

Plaintiff advised "Ms. McCea that she should look in volumes 1 and 2 of his medical file [because there] were medical issues left unattended to and /or unchecked." (Id.). Defendant McCea continued to look in volume 3 of his medical records, then closed the file, and told him good-bye. (Id.). Plaintiff alleges defendant McCea's responses were "not reasonable" as the director of nursing and that she breached the standard of care, in that she should have had plaintiff "promp[t]ly examined by qualified medical personnel, prescribed and/or ordered the necessary treatment, given that treatment properly and then provided follow up attention as needed." (Id.).

On December 19, 2104, plaintiff's grievance was denied by defendant Andrews, who advised plaintiff that "this discussion regarding [his] malfunctioning shunt is closed." (Id. at 11). Plaintiff contends that Defendant Andrews "made a decision . . . that requires[s] a specialist and/or technician in Neurosurgery attention." (Id.).

Furthermore, plaintiff identifies his specific claim against defendant Myers as occurring on October 30, 2014, when defendant Myers failed to install "any form of audit procedures to check on the performance of it[s] contract[o]r or medical services and allowed to exist[] the deprivation of needed medical services to [plaintiff]," "which has endangered [plaintiff's] life, caused him unnecessary pains and made it very difficult for him to do basic things like sleep normal[ly]." (Id. at 5, 12). Defendant Myers is further alleged to have failed to "install any audit procedures to check on mental health performances [and medical services] . . .[,] allowed to exist the deprivation of mental health care [and adequate medical care], [and] neglected to implement any policies, procedures and/or standard operating procedures designed to assure

that [plaintiff] received[] mental health care
[and adequate medical care at community
standards].” (Id. at 11, 13).

On October 30, 2014, plaintiff alleges that the
specific claims against defendants Andrews and
McCeas arose “when [each] displayed grossly
deficient medical care by relying on an
incomplete medical report to deny [plaintiff]
medical treatment. The report [each] relied on
to make [a] decision does not reveal that
[plaintiff’s] VP shunt is working as it [was]
designed to work.” (Id. at 5-6).

Near the end of the allegations plaintiff makes
broad, conclusory statements without providing a
connection to a specific defendant or a time
period. In them, plaintiff states that
defendants’ “obdurate refusals to ensure that
[he] be provided with a course of treatment that
was medically appropriate for a VP shunt
malfunction was clearly wanton[n]ess due to the
duration of [his] shunt malfunction has existed
without any appropriate treatment prescribed.”
(Id. at 12). He alleges that this total
withdrawal of “appropriate medical care”
constitutes “an imminent damage of serious
physical injury[]” because his shunt has
collapsed, does not refill, and can further
deteriorate to the extent that it poses “an
imminent danger of serious physical injury.”
(Id.). Plaintiff also conclusorily complains of
other medical problems for which he has not
received care such as AVMs, a seizure disorder,
prior stroke, anxiety issues, and depression.
(Id.). For relief, plaintiff requests
compensatory and punitive damages, attorney’s
fees, and costs taxed to defendants. (Id. at 7).

**III.  Analysis.**

Due to plaintiff having more than three actions
or appeals dismissed as frivolous, malicious, or
for failure to state a claim upon which relief
can be granted, plaintiff’s allegations must
satisfy § 1915(g)’s exception, which requires
that plaintiff face an “imminent danger of

13

serious physical injury" at the time of filing in order for this action to proceed.  Additionally, an adequate nexus must exist between the "imminent danger of serious physical injury that is fairly traceable to a violation of law that the complaint asserts."  Pettus v. Morgenthau, 554 F.3d 293, 296, 298 (2d Cir. 2009) (finding that the exception to § 1915(g) was not satisfied because the nexus was too attenuated between the defendants associated with plaintiff's conviction and the alleged imminent danger of serious physical injury arising from his incarceration that was based on the denial of medication and being "surrounded by hostile, aggressive, violent inmates who beat, rob, assault, extort, and sexually abuse him").  Here, plaintiff's allegations fail to demonstrate that he was in "imminent danger of serious physical injury" at the time he filed the complaint in April, 2015 in order to avail himself of the exception to § 1915(g).  Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (a claim must have facial plausibility in order for a claim to be stated as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiff's complaint was filed between April 16, 2015, when he signed the complaint, and April 17, 2015, when the Court received his complaint. (Id. at 7).  See Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (a prisoner's "deliver[y of] a pleading to the prison authorities for forwarding to the court clerk" constitutes filing); see Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993) (extending Houston to § 1983 actions filed by prisoners). In this instance, the exact filing date does not need to be determined because the dates that are connected to a named defendant range from October 14, 2014 to December 19, 2014, not near the time of the complaint's filing in April, 2015.  (Doc. 1 at 5-6, 11).  The allegations do not show that a named defendant was involved in any of plaintiff's claims at the time the complaint was filed in April, 2015.  Cf. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (finding that

a plaintiff must establish a causal connection
between a defendant's actions, orders, customs,
or policies and a deprivation of the plaintiff's
constitutional rights in order to state a claim
upon which relief may be granted in a § 1983
action). Nor do the allegations that are
unconnected to a defendant indicate in a clear
and plausible manner that at the time of filing
that plaintiff was in imminent danger of a
serious physical injury, as those allegations
are vague and concluory. Cf. Iqbal, 556 U.S. at 678,
129 S.Ct. at 1950 (holding that "a complaint must
contain sufficient factual matter, accepted as
true, to state a claim to relief that is
plausible on its face") (citation omitted). At
best, these unconnected allegations indicate
there is a possibility his shunt can deteriorate
and eventually pose "an imminent danger of
serious physical injury." (Id. at 12).

The undersigned acknowledges that plaintiff's
underlying hydrocephalus and VP shunt's condition
have been recognized as a serious medical need.
See May v. Patterson, CA No. 11-675-KD-B (S.D.
Ala.) (recognizing plaintiff's serious medical
need), appeal dismissed as frivolous (11th Cir.
June 26, 2014) (holding that the District Court
properly granted summary judgment) (Doc. 94). FN3
FN4

> FN3 In May v. Patterson, CA No. 11-675-
> KD-B, the medical defendants furnished
> with their Special Report a copy of
> plaintiff's medical records. (Doc.
> 32). These records show that on July
> 12, 2010, Dr. Eugene Quindlen, a
> neurosurgeon at the University of South
> Alabama ("USA"), examined plaintiff for
> increased headaches and ataxia. (Doc.
> 32-3 at 19). He noted plaintiff's
> history of having a VP shunt placed in
> his brain in 1990 for hydrocephalus and
> of having a resection of two AVMs in
> his brain in 1991 and 1992 by Dr. Wink
> Fisher at UAB. (Id.). Earlier, when
> Dr. Quindlen saw plaintiff in 2008, he
> could find no particular reason for his

headaches.  (Id.).   He observed that
plaintiff had a history of a severe
stroke, and was taking tegretol for
seizures.  (Id.).

The records show that on July 12,
2010, plaintiff was having severe
headaches, dizzy spells, and fatigue
(id.); his gait was slightly more stiff
than before; and Dr. Quindlen could
palpate the shunt, which was noted as
being collapsed and not refilling.
(Id.).  His review of the x-rays showed
no evidence of edema and no shunt x-
rays being performed.  (Id.).  Dr.
Quindlen found that plaintiff was
"healthy appearing and in no apparent
distress" and did not think that
plaintiff had "severe elevated
intracranial pressure [, but instead
was] having poor shunt function."
(Id.).  His plan was to obtain shunt
films and admit plaintiff to the
hospital for a shunt revision.  (Id.).

Shortly thereafter, on September
15, 2010, pursuant to the warden's
request, the prison doctor extensively
reviewed plaintiff's medical records,
noting that plaintiff has hydrocephalus
with a malfunctioning shunt, which had
led to headaches and ataxia.  (Doc. 32-
3 at 5).  The warden wanted the doctor
to talk to plaintiff because plaintiff
refused to have surgery performed by
the neurosurgeon at USA and wanted to
have his original surgeon at UAB, who
had given him the shunt, to perform the
surgery.  (Id.).  The UAB option was
not available.   (Id.).   Plaintiff
refused to have the surgery.  (Id. at
30).

On July 24, 2013, a Report and
Recommendation was entered granting
defendants summary judgment and finding
no deliberate indifference to
plaintiff's serious medical needs.
(Doc. 69).  The extensive medical
treatment that plaintiff received was

recounted.    After the District Court adopted the Report and Recommendation and entered Judgment for defendants (Doc. 75), plaintiff appealed.

On June 26, 2014, the Eleventh Circuit Court of Appeals found plaintiff's appeal to be frivolous. (Doc. 94 at 7).  The Eleventh Circuit noted that plaintiff's taking issue with Dr. Quindlen's recommendation was the root of the instant action and "cannot sustain a claim of deliberate indifference."    (Id.).    The Court opined that plaintiff had "not identified any evidence to refute or even undermine Dr. Quindlen's medical judgment, or otherwise demonstrate that the Defendant rendered inadequate or delayed medical care.   [Plaintiff] instead has demanded a physician of his own choosing." (Id.)

In a later action, May v. Barber, CA No. 14-479-WS-N (S.D. Ala. Feb. 26, 2105), some of plaintiff's litigation history surrounding medical issues with his head is recounted in the Magistrate Judge's Report and Recommendation recommending the dismissal of plaintiff's action pursuant to 28 U.S.C. § 1915(g).  (Doc. 2).

FN 4 The Court takes judicial notice of its records.  Nguyen v. United States, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009).

In affirming the district court's dismissal of plaintiff's action, the Eleventh Circuit ruled that plaintiff had "not identified any evidence to refute or even undermine Dr. Quindlen's medical judgment, or otherwise demonstrate that the Defendant rendered inadequate or delayed medical care.  [Plaintiff] instead has demanded a physician of his own choosing." (Id. at 7).   It further advised plaintiff that "[w]hen an inmate receives adequate medical care, but desires different modes of treatment, the care provided

does not amount to deliberate indifference." (Id.).

In this action, plaintiff put the Court on notice that the present action is a re-filing of his prior action that was barred by § 1915(g). Apparently, plaintiff did not understand the prior case's dismissal pursuant to § 1915(g) because his additional allegations in the present complaint do not address the problem with his prior action, that is, he must show that at the time of the complaint's filing that he was "imminent danger of a serious physical injury" and that he make this showing with specific fact allegations. Ball, supra, CA No. 06-0496-CG-M, 2007 WL 484547, at *1. With plaintiff's having failed to make the required showing, the undersigned concludes that plaintiff's allegations do not demonstrate that he was "under imminent danger of serious physical injury" at the time the complaint was filed in April, 2015 and therefore has not satisfied § 1915(g)'s exception. Brown, 387 F.3d at 1350.

**IV. Conclusion.**

Because plaintiff cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400.00 filing fee at the time he filed this action, plaintiff's action is due to be dismissed without prejudice. Dupree, 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to 28 U.S.C. 1915(g) does not pay the full filing fee at the time he initiates the action); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), cert. denied, 535 U.S. 976 (2002). Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

*May v. Andrews,* CA No. 15-211-KD-N, 2015 U.S. Dist. LEXIS 71442 (S.D. Ala. May 7, 2015), *objected to and dismissed without prejudice by,* 2015 U.S. Dist. LEXIS 71439 (June 2,

18

2015).

Likewise, the undersigned finds that Plaintiff did not
show in the present Complaint that he was "under imminent
danger of serious physical injury" at the time of the
present Complaint's filing.  That is, the allegations
against Defendants occurred from October, 2014, to
December, 2014, in both the prior and present actions,
which was at least half a year before the filing of this
action in June, 2015.  Thus, Plaintiff did not make the
required showing that he was "under imminent danger of
serious physical injury" at the time of the present
Complaint's filing in order for his Complaint to come
within the exception to § 1915(g).  *Brown v. Johnson,* 387
F.3d 1344, 1349 (11th Cir. 2004) ("[A] prisoner must allege
a present imminent danger, as opposed to a past danger, to
proceed under section 1915(g)"); *Medberry v. Butler,* 185
F.3d 1189, 1193 (11th Cir. 1999) (ruling that the plaintiff
must face imminent danger of serious physical injury at the
time the complaint is filed, not at a prior time).

IV.  Conclusion.

Because Plaintiff cannot avail himself of § 1915(g)'s
exception, and on account of his failure to pay the $400.00
filing fee at the time he filed this action, Plaintiff's
action is due to be dismissed without prejudice.  *Dupree,*

19

284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to 28 U.S.C. § 1915(g) does not pay the full filing fee at the time he *initiates* the action); *Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), *cert. denied*, 535 U.S. 976 (2002).  Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

Furthermore, the Court notes that since the beginning of this calendar year, Plaintiff has filed the following actions in this Court containing claims arising from medical issues with his head, which are in addition to his ten prior actions based on medical issues with his head, (which are listed in footnote 1 of the prior action's Report and Recommendation, *see* p.8, *supra*): *May v. Stone,* CA No. 15-25-KD-B, 2015 WL 3459035 (S.D. Ala. June 1, 2015), *notice of appeal filed* (June 11, 2015), was filed near January 16, 2015; *May v. Andrews,* CA No. 15-30-KD-M (S.D. Ala. April 24, 2015)(§ 1915(g) dismissal); *May v. Barber,* CA No. 15-201-WS-C (pending); *May v. Myers,* CA No. 15-211-KD-M (S.D. Ala. June 2, 2015)(§ 1915(g) dismissal); May v. Hetzel, CA No. 15-230-KD-M (S.D. Ala. July 15,

2015)(§ 1915(g) dismissal); *May v. Myers,* CA No. 15-304-KD-M (§ 1915(g) dismissal); the present action; and *May v. Myers*, CA No. 15-347-KD-C (pending – no ifp filed or filing fee paid). Additionally, on March 10, 2015, the Eleventh Circuit Court of Appeals found in an earlier action that Plaintiff's appeal was not frivolous and granted Plaintiff *in forma pauperis* status to proceed with his appeal in *May v. Hetzel,* CA No. 14-155-WS-M, 2014 WL 5072693, *adopted* (S.D. Ala. Oct. 7, 2014), *appeal filed*, (Nov. 4, 2014); Plaintiff's underlying action concerns the treatment he received for medical issues with his head.

Plaintiff's repeated filing of claims based on medical issues with his head and failure to heed the information contained in the Court's Report and Recommendations with respect to an appropriate time for filing an action that comes within § 1915(g)'s exception against an appropriate defendant is causing the Court to consider taking additional measures to curb Plaintiff's litigation activity based on claims concerning his head's medical issues. These measures would be in addition to the bar put in place by § 1915(g). *See Procup v. Strickland,* 792 F.2d 1069, 1072-73 (11th Cir. 1986) (describing sanctions, in a pre-PLRA case, that other courts have employed through their inherent powers when confronted with an inmate who filed

repetitious claims, such limiting the number of IFP filings to six per year); *Smith v. Florida Dep't of Corrs.,* 369 F. App'x 36, 40 (11th Cir. 2010) (approving an injunction that mirrored the scope of § 1915(g) so as not to foreclose imminent danger claims)[4]; *Miller v. Donald,* 541 F.3d 1091, 1099 (11th Cir. 2008) (noting, in its rejection of a "§ 1915(g)-plus" sanction, that "[t]he district courts will continue to develop mechanisms that protect their own jurisdictions consistent with their inherent power and limitations, and § 1915(g)'s relatively narrow rule-and-exception pairing neither subtracts from nor adds to them"); *Henderson v. Morales,* No. CV 312-092, 2012 WL 5473057, at *3 (N.D. Ga. Oct. 10, 2012)(imposing the sanction that the inmate submit a sworn statement stating that he is in imminent danger, which will subject him to criminal prosecution should he perjure himself, after the inmate was previously warned that his tactics to circumvent § 1915(g) were an abuse of process and a waste of judicial resources which may subject him to sanctions).

Considering that Plaintiff's appeal is before the Eleventh Circuit in *May v. Hetzel,* CA No. 14-155-WS-M,

---

[4]   "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

*supra*, a possibility exists that the Eleventh Circuit may address matters related to the medical issues with Plaintiff's head.  In light of this pending appeal, this Court looks dimly on Plaintiff's repetitive filing of complaints concerning medical issues with his head, particularly those five actions filed after *in forma pauperis* status on appeal was granted on March 10, 2015, namely, CA No. 15-201—WS-C, CA No. 15-211-KD-N, CA No. 15-230-KD-M, CA No. 15-304-KD-M, and CA No. 15-347-KD-C. Furthermore, the Court observes that Plaintiff's medical issues with his head were previously before the Eleventh Circuit in *May v. Patterson,* CA No. 11-675-KD-B, 2014 WL 5072693, *adopted* (S.D. Ala. Oct. 7, 2014) (granting defendants' summary judgment), *appeal denied* (11th Cir. June 26, 2014) (finding in an opinion the appeal was frivolous).

Plaintiff is **WARNED** that his continued filing of repetitive *in forma pauperis* actions involving his head's medical issues that do not satisfy § 1915(g)'s exception may result in the imposition of sanctions because he is abusing the Court and using its spare resources, which deprives the Court from addressing other actions.  *See Malautea v. Suzuki Motor Co.,* 987 F.2d 1536 (11th Cir. 1993) (imposing sanctions after warnings were issued),

*cert. denied,* 510 U.S. 863 (1993); *Moon v. Newsome,* 863
F.2d 835 (11th Cir.) (same), *cert. denied,* 493 U.S. 863
(1989); *Howard v. Langston,* 567 F. App'x 289 (5th Cir.
2014) (imposing monetary sanctions after previously warning
the § 1915(g)-barred prisoner against filing frivolous
matters and advising him to review any pending appeals and
dismiss those that are frivolous); *Smith v. Warden, Hardee
Corr. Inst.,* 597 F. App'x 1027, 1031-32 (11th Cir. 2015)
(holding that "[a] district court may sanction a party for
filing a pleading that lacks a reasonable factual basis;
that is predicated on a frivolous legal theory; or that is
submitted in bad faith for an improper purpose" and that
the prisoner, "who is a frequent filer, should bear his own
costs to curtail his abusive litigation").  The Clerk is
**DIRECTED** to reflect prominently on the docket sheet in this
action that Plaintiff has been warned about filing
repetitive *in forma pauperis* complaints about medical
issues with his head that do not meet § 1915(g)'s exception.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be
served on all parties in the manner provided by law. Any
party who objects to this recommendation or anything in it
must, within fourteen (14) days of the date of service of
this document, file specific written objections with the

Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that *under Eleventh Circuit Rule 3-1,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 20th day of July, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE